## Lloyd *versus* Williams.

1. A conveyance by a son to his mother is not fraudulent, though she knows that he is in debt to others beyond the value of his property, if there be no inadequacy in the consideration, or taint of dishonesty about the transaction.

2. A mother is held to stricter proof of her honesty in dealing with her son than a stranger would be; but, if she can show clearly that she has a just debt against him, she has the same right to secure it by taking a judgment or a conveyance that any other creditor would have.

ERROR to the Common Pleas of *Blair county.*

This was an ejectment by William M. Lloyd *v.* William Williams, for a house and lot of ground, No. 14, in Hollidaysburg.

On the 9th Nov. 1847, Wm. Williams, *the nominal* defendant, owning a large amount of real estate in and adjoining Hollidaysburg, free from encumbrance, sold and conveyed to his mother, the *real* defendant, a small part thereof, viz.: lot No. 14, the premises in controversy. On the 10th of Nov. 1847, and subsequently, a number of judgments *were entered of record* against William Williams, the largest of which was a cautionary judgment in favor of the Exchange Bank of Pittsburgh for $30,000. On this judgment a *fi. fa.* was issued to No. 8 of Dec. Term, 1849, under which the sheriff levied on all the real estate of William Williams, including such interest as he had in lot No. 14. After an amicable condemnation, and by consent, the property was sold in lots to different persons, for the entire sum of $28,000; lot No. 14 having been struck down at $2500 to Wm. M. Lloyd, who purchased with record and actual notice of the conveyance to Sarah Williams, on the 9th Nov. 1847. This ejectment was brought by William M. Lloyd against Wm. Williams; but by agreement of the parties filed, Sarah Williams was made the real defendant. It was stated that the authority to confess the judgment in favor of the bank was executed on the 9th Nov. 1847, the date of the conveyance to Sarah Williams.

On the part of the plaintiff was given in evidence the record of the judgment above mentioned, in favor of the Exchange Bank, for $30,000, entered 10th November, 1847, together with the sheriff's deed.

On the part of the *defendant* was given in evidence the conveyance to Sarah Williams; and, to repel the presumption of fraud, it was shown that in 1810 William Barns, the father of Sarah Williams, conveyed to his grandson, William Williams, a lot in Greensburg, Pa., accompanied by a parol trust in favor of *Sarah Williams.* This property was held by William Williams for many years in trust for his mother, who improved it, lived on it, rented a portion of it, and exercised other acts of

ownership over it until 1826, when she yielded her permission to her said son to sell it, on condition that out of the proceeds of sale he would purchase for her a comfortable home.    The property was then sold for $2000.    In 1836 William Williams having failed to invest the money, gave to his mother his note for $1800.    This ' note was shown to be in his handwriting of that date, and to have been in the possession of Mrs. Williams for many years previous to 1847.    It was stated to be all she had of her father's bounty; and it was said that to secure this claim Wm. Williams executed and delivered the deed of 9th Nov. 1847.

TAYLOR, J., *inter alia*, instructed the jury that it was disclosed by the evidence that Williams, at the date of the conveyance to his mother, was indebted to an amount equal to the value of all his property.    That the conveyance to his mother was made the same day the judgment-note was given to the bank, although the judgment was not entered until the day following.    That it was done in contemplation of that act did not admit of a doubt.    That, under these and other facts attending the transaction, he was asked to instruct the jury that the conveyance was fraudulent, and, so far as it interfered with the rights of creditors, was void.    He declined to do so, saying that there were facts in controversy, and he referred to the jury to decide, whether a good consideration for the conveyance had been shown, stating to the jury that if the sale or conveyance had been shown to have been made in discharge of an honest debt, a good consideration had been shown. 2dly. Were the circumstances of William Williams, as disclosed in the evidence, known to Sarah Williams at the time she took the conveyance, and was the conveyance taken at that particular time in view of her son's large indebtedness, and to secure to herself the property before it could be reached by the Exchange Bank, or his other creditors?    If so, they were instructed to regard the conveyance as fraudulent' and void, and not standing in the way of the plaintiff's recovery, although they should find it to have been *upon good consideration*.    He added, There can be no doubt that William Williams made the conveyance in view of his indebtedness, and intended confession of judgment to the bank.    " The question is, *was she influenced by the same facts ?*"

The *first* point submitted on the part of the plaintiff, was, That the peculiar circumstances attending the conveyance raised a presumption of fraud, and cast upon the defendants the necessity of rebutting the presumption.    This point was answered *in the affirmative*.

To another point he said, that the indication of haste *in recording the deed* was a circumstance to be considered by the jury in determining her knowledge of the circumstances and intent of

[Lloyd v. Williams.]

William Williams; but that he would not say that it was *conclusive* evidence upon the point.

In conclusion he referred to the jury to determine whether the deed was upon good consideration. 2. Whether it was also "upon the part of Sarah Williams, *bonâ fide*, or taken by her to satisfy a true debt, and without any knowledge of his large indebtedness, and his intention immediately afterwards to give judgment to the bank, and thus to hinder, delay, and defraud his creditors." He said, "If *either* of these questions be decided against Sarah Williams, verdict must be for the plaintiff. If *both* of them be decided in her favor, your verdict will be for the defendant."

October 29, 1850, verdict for defendants.

Error was assigned to the charge as respected the knowledge of Sarah Williams of the fraudulent design of the grantor; also to the answer as to the recording of the deed; also to the answer to a point which was to the effect, that the bank having an undocketed judgment to an amount exceeding the resources of William Williams, his deed to his mother, given without proof of the payment of the consideration-money at the time of the transfer, and under proof that the note alleged to be its consideration was in her hands three, four, or five days afterwards, uncancelled, the lien of the judgment bound the property in dispute.

The answer was, that the point was correct if the jury find the facts to be as stated or assumed in it.

And to the answer to the 6th and last points, viz.: That the undisputed facts in evidence rendered the deed fraudulent as to creditors,

·The Court declined so to charge, and referred to the general charge and to the answer to the first point.

*Lowrie*, for plaintiff in error.—It was contended that the peculiar circumstances attending the transaction raised a legal presumption of fraud and collusion in the parties, and threw the burden of explanation on the defendants: 4 *Watts* 362; 10 *Ser. & R.* 424; 2 *Whar.* 308; 1 *Story's Eq.* § 369. It was said that Mrs. Williams must show a valuable consideration for the deed, a *bonâ fide* intention in herself, and an acceptance of the conveyance without notice of a fraudulent intent in William Williams, the grantor: *Statute of Elizabeth Ch.* 5; 1 *Story's Eq.* § 369. Reference was made to Twyn's Case, 3 *Coke's Rep.* 81.

If the transaction be not *bonâ fide*, the circumstance of it being done for a valuable consideration would not alone take it out of the statute: *Cowper's Rep.* 434, Cadogan v. Kent; 1 *Rawle* 353. Where there is a presumption and allegation of fraud, the party claiming should clearly prove payment of the consideration-money,

and otherwise elucidate the transaction: 2 *Vesey* 516; 4 *Johns.* 581; 14 *Id.* 493; 4 *Harris* 497, Zerbe v. Miller.

It was contended that under the *undisputed* facts of the case, the Court should have charged in favor of the plaintiff.  Fraud is a question of law where there is no dispute about the facts: 1 *Burrow* 474; *Id.* 497; 9 *Johns.* 337; 1 *Black Rep.* 196; 1 *Rawle* 349; 5 *Barr* 478; 1 *Harris* 584, Ashmead v. Hean & Moulfair.

The Court declined to hear the counsel of *defendant*.  *Creswell*, *McMurtrie*, and *Blair*, were for defendant.

*Hofius*, for plaintiff, the Court declined to hear, inasmuch as none of the counsel for defendant had been heard.

The opinion of the Court was delivered by

BLACK, C. J.—This was ejectment for a house and lot in Hollidaysburg, which the plaintiff claims as vendee of the sheriff under an execution against William Williams, issued by the Exchange Bank of Pittsburgh.  The defendant claims it under a deed from William Williams, dated before the bank's judgment was entered up.

It is asserted that the deed to Mrs. Williams, who is the mother of William Williams, was fraudulent.  Yet it is not denied that she had a just debt against her son, which he was bound in all good conscience to pay.  He chose to pay it by a conveyance of the property in dispute, and she agreed to accept it in satisfaction. There was no inadequacy or taint of dishonesty about the consideration.  But the bank had a claim against Williams at the same time, and the defendant's conduct in getting a conveyance before the bank could or would obtain a lien, seems to be thought such inexcusable wickedness that nothing can save her but full proof that she was ignorant of the bank's claim.  The court below conceded this.  The jury were told that they might find for the plaintiff, if they believed the defendant (though her debt was just) knew her son's circumstances, and took the deed to secure the property to herself before it could be reached by his other creditors. This was far beyond anything the plaintiff had a right to look for. Suppose she did know that he was failing?  What rule of duty required her to wait until his other debts were satisfied before she made an effort to secure her own?  She was no more bound to take care of the bank's interests, than the bank was to see that hers did not suffer.  If it could be held that a conveyance of a debtor to his creditor is fraudulent, because he knows that there are other creditors besides himself, the maxim which gives the advantage to the vigilant would be reversed; for those who would

[Lloyd v. Williams.]

sleep soundest and longest would get the most. Two creditors equally honest are equally favored in equity, and when they come into a court of law their rights are determined according to priority. Either may secure his debt by taking a judgment or a conveyance from the debtor, though he does know that the other's chances of security will thereby be diminished. The doctrine laid down in this case by the court below was countenanced by the act of 1849, and the construction given to it in Summer's Appeal. But several unreported cases, not known at the time of this trial, have exploded it utterly.

The relationship between the plaintiff and the grantor in the deed was a fact which held her to stricter proof of her debt and of her honesty in the whole transaction, than would have been required of a stranger. But she met this suspicious circumstance with evidence so clear that it silenced every doubt; and this made her case like that of any other honest creditor.

All the evidence produced by the plaintiff to show that the transaction was unfair, including the declaration of Mrs. Williams to Robinson, made after the deed, that she could show the notes, was submitted to the jury in a manner entirely unexceptionable. The view taken by the Court of the whole case, from beginning to end, was much more favorable to the plaintiff than the law required.

Judgment affirmed.